Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the second day of our panel sitting. Judge Brasher, Judge Carnes and I were supposed to be in Atlanta this week, but obviously the virus had some different ideas, but we're hoping that pretty soon we'll be able to get back to business as as normal. But we're happy you're with us today, at least virtually and to help us with our with our cases. You don't have the clock in front of you as you would in a podium, but you've got a timer on the left hand corner of the upper left hand corner of the screen, which tells you when your time is drawing to a close. So when you hit that minute or so, start drawing your remarks to a close and wrap up. If we take you beyond the time, then please keep going. You're on our time and not yours. And with that, the three of us, Judge Brasher, Judge Carnes and I want to welcome you and we'll get started with our first case, which is number 20 dash 11862 Antonio Viverette versus the Commissioner of Social Security, Mr Steinberg. Good morning. Morning. Would you like me to begin. Yes, please. Okay, please the court. I represent Antonio Viverette a claimant for Social Security supplemental security income benefits. The administrative law judge found that Mr Viverette was limited to simple routine repetitive tasks and limited to sedentary physical work. She found he had borderline intellectual functioning and a below the knee amputation, which resulted in those limitations. Based on a hypothetical to a vocational specialist, with those limitations, the vocational specialist listed three jobs that the hypothetical claimant could perform. The first job, which I'll address is the document preparer job. According to the Dictionary of Occupational Titles, this job involves preparing documents for microfilming. It has a reasoning level of three. Now, it's even though it's an unskilled job per the DOT reasoning level of three requires more than just simple routine repetitive tasks. There's clerical involvement, there's using judgment. It's not a simple routine repetitive task. Now, wasn't wasn't didn't the ALJ also say that your client was limited to simple work related decision making so you're saying it wasn't a simple decision making type of job. Correct. Now there's there is some split of authority amongst the circuits as to whether a reason level of three is per se inconsistent with simple routine repetitive tasks. So our position that the, the, the, the better analysis is that it is. You have to remember this, this gentleman has a very low IQ borderline intellectual functioning is is generally between 70 and 80 IQ, and we're talking about about clerical type of work, not manual labor. So, the reason level of one is, is more in line with a simple routine repetitive task or possibly a two but a three requires more detailed or complex tasks, even though they're still at the unskilled level. Mr Steinberg you'd never you never during the hearing question the V about that or address the district court, or the ALJ about the fact that you thought of this particular level three job was inconsistent with your clients limitations. That's correct, is it not. Well, you know, in these. I've been doing a lot of a lot of these cases, and I've made the same argument, not in this particular case because the judge. We consistently make this argument, and it's it goes, I hate to say it goes without saying but it goes without saying that, that, that we are going to make the same argument. In every case that the recent level of three is inconsistent with simple routine repetitive tasks. It's, it's a legal question not a that has to be addressed by the courts. I can't cite any 11 circuit cases because there are none that address this issue. But as you brought it up, had you brought it up could not have that, and I know it's the social security system is not totally adversarial at all. It's a different thing but had you brought it up. The V at that time could have addressed some of the particular requirements of the job and and clarified whether or not those particular jobs would have been consistent with your clients ability level had you brought the topic up correct. In this case, yes, and I can tell you I brought it up on many occasions and, you know, the same judge the same V. And, you know, we've basically danced this dance many times and so it's not it, I did not bring it up in this particular case. It's up. No, I didn't, but I did bring it up at the district court level and, of course, at this level and it's a very very common issue that has never been addressed. Could you address something for me the court the way I understood the district courts ruling here just to paraphrase was that sort of let's forget about this issue. This was about 100,000 or so jobs, but there were two other categories of jobs that equal to about 21,000 jobs, and that the district court said well you know we'll just kind of forget about this issue and we'll just affirm on that basis. What do you say about that. Sure. Okay. Well, in the past, the, the court has said it's not up to us to determine what a significant number is, it's up to the administrative law judge and administrative law judge and broad discretion. Now, we're never going to see a case where a judge says that 21,000 jobs is not significant, because the claimant wouldn't appeal this issue, and the defendant couldn't appeal because they're the ones that made the decision. So, our position on this is that the judge had the discretion to find that 21,000 jobs is not significant. And according to the 11th circuit. The court could have found it was significant, but it's not up to the district court of the 11th circuit to guess what the administrative law judge would have done had the first job been eliminated. Now, I would concede if there was like a million jobs or 100,000 jobs would be harmless error, but there are cases out of other circuits that say that 25,000 is borderline. So, it's not, you know, beyond reasonableness that the judge may have found if the only two jobs in the national economy claim it could do is put the, the, the temples and those pieces on glasses or way gunpowder that the judge may have said no, that's not a significant number of jobs in the national economy. That would kind of segue into the third argument. What are the numbers Mr Steinberg about the other two positions beyond document preparer pressures question. Here's what happened. You know, when, when I, when the vocational expert gave the numbers. I cross examine them and I said, look, you know, is this for that one particular dot dot occupation. And the answer was not exactly was for that occupation and similar occupation so they never specifically address, whether it's for this particular dot occupation. Now, there may be similar occupations with a reason level three, which are still unskilled jobs, but are inconsistent with the hypothetical. So, our position is that the numbers were were were conflated or they were not not not true numbers they were given a exaggerated numbers for that one particular dot occupation. The same goes with the, the, the, the job where they put the nose pieces and the temples on glasses. The. There are many jobs in the op atomic manufacturing industry that are unskilled, but not necessarily that one particular occupation. So, we're talking about a sedentary job where somebody, you know, has a below the knee up amputation and has a very low IQ, and there's gonna be very few jobs that somebody like that can perform. And so what we're saying is the numbers were were not accurate. Now, even if they were to give accurate numbers, maybe a couple thousand. Perhaps the judge could say even three 4000 jobs were significant but maybe the judge wouldn't have found that. And it's really up to the LJ to make that decision, not the courts. Can I follow up on something that I'm Judge Carnes asked so she, she asked, Look, you know, did you raise this in front of the LJ, and I want in our case in Washington. Could you talk about that it was my understanding that in Washington, we said that the LJ has an affirmative duty to like, look at these no matter whether they're raised or not, is that, is that what you think Washington stands for is it. Yes, it does, it does. The judge has a permanent duty to raise that. And I'm not sure whether this case was heard before or after Washington was was decided. Yeah. And so I'm not sure either. So you mentioned that circuit split on this issue. So Washington came out and Washington identified sort of a specific way to address this apparent conflict issue. Do you know whether other circuits agree with Washington standard or whether they disagree with Washington standard for for identifying conflicts. Believe that there's most of them do. There may be one or two that don't, I'm not I'm not positive about it. I wasn't prepared to make that argument. Well, I guess my question is, do you know whether this circuit split is based on something. Did we inadvertently split with these circuits in Washington, or is this a circuit split that you're asking. Do you understand my point. Is this something that we would have to address for the first time right now or have we sort of already gone down one path by by deciding Washington the way we did. I think you've already decided Washington, but not. I'm not sure if the reason level three was decided. Yeah. I have five seconds left. I've got about five minutes so I'm going to go ahead and wrap it up. Okay, Mr. Thank you very much. You've saved your time for rebuttal. Mr. Blake. Thank you, Your Honor. If it pleases the court, my name is Richard Blake and I represent the Commissioner of Social Security. In this case, substantial evidence supported the ALJ step by finding that the claimant could perform jobs existing in significant numbers in the national economy. The help determine if the claimant could perform other jobs, the ALJ obtained testimony from a vocational expert. He posed a hypothetical question to the VE that incorporated all the limitations that were included in the RFC finding and the VE testified that the individual could perform example occupations representative occupations, including the final assembler position with approximately 7000 positions in the national economy. And the check where position with approximately 14,000 occupations in the national economy. Accordingly, the VE testimony constitutes substantial evidence supporting the ALJ step by finding and this court should affirm. Regarding the first argument about the reasoning level three document preparer job, the commissioner's position is that the court need not reach this argument that, you know, this job had a reasoning level of three, which the RFC didn't allow for. Because the other two occupations identified by the by the VE and cited by the ALJ, the final assembler position and the check where position both have a reasoning level of one and claimant has never argued. In fact, even today does not contend that he can't do a reasoning level one job. The VE's testimony for those two occupations shows a significant number of jobs in the national economy. And in fact, in two recent decisions, this court has held that where you have this type, this exact situation where you have three jobs identified. One of them is eliminated because it's a higher reasoning level. But there are still other jobs identified with a reasoning level that the claimant can do. The court doesn't need to address the reasoning level three job, and that was in the Valdez case and in the Wooten case. And in both of those cases, the court held that any error pertaining to the to the ALJ's conclusion that the claimant could do a reasoning level three job is harmless because the other two jobs he's qualified to do, even in light of his RFC for simple, routine, repetitive work. Mr. Steinberg says in part, Mr. Blake, that the VE sort of wasn't able to match the jobs in the national economy to the specific positions, sort of one of the types of problems that we identified in our good opinion. So what do you say to that? Yes, sir. Absolutely. Well, this case is very different than good. And let me explain. I think the argument that Mr. Steinberg has made is that particularly in in in in consideration of the way the weight checker job. Or check way or the check way or job, which there are fourteen thousand approximately fourteen thousand jobs in the national economy. You know, he's he's brought up the argument that. That it's that the. That the that part of those fourteen thousand jobs could be other jobs with a reasoning level of three or higher. However, and in in in support of that, he points to one, he pulls up one occupation, a weight tester, which is a job that has a reasoning level of. But the commissioner points out that plaintiff did not present this argument to the ALJ. This this occupational data that plaintiff now raises was not presented to the ALJ. And even though the ALJ allowed claimant an extra two weeks after the hearing to present a post hearing brief in which he could have raised this, but he didn't present this data. And because this evidence was not presented to the ALJ, it should not be considered by this court in the Valdez case and also in the Wooten case. This court, but in Valdez, this court said that when a claimant does not present contradictory occupational employment statistics before the ALJ and does not object to the V's testimony. This court is foreclosed from considering the reference data on appeal. Also, in the Falch case, which Valdez cited, the court noted that this court will only look at evidence actually presented to the ALJ. But even assuming this had been presented, claimant's argument that, you know, there's some number of reasoning level three jobs that could be included in this 14000 is speculative. Not only was it not presented to the ALJ, but even now he never presents any number. It's just the testimony was simply that it could be there could be reasoning level three jobs. And even assuming even I mean, we have to check what the weight tester job, which we know is a reasoning level three job. So it's sedentary, unskilled, but there's been there's no well, certainly nothing was presented to the ALJ. But even now, there's no evidence regarding how many weight tester jobs are there. There's nothing showing that the V's testimony that there are approximately 14000 jobs is wrong. In fact, the V's testimony at the hearing was there's approximately 14000 weight check or check weigh your jobs. That's still the V's testimony. The mere fact that, well, you know, there could be some weight tester jobs in there that are reasoning level three. That doesn't change the V's testimony that there are approximately 14000. And as this court, you mentioned the good case, as this court noted in good and good. This court said, we recognize that the Social Security Act and its regulations do not mandate a precise count of job numbers. And we do not expect vocational experts to formulate opinions with more confidence than the imperfect data allows. So so in answer to your question, you know. The VE testified that she was using the best resources that were available, that the the occupation employment quarterly. You know, it takes the numbers from the SOC group. The SOC group is the. The specific occupational group. And so when she she starts with that number, there's a lot of D.O.T. codes in it. She uses the OEQ to break it down. And that's where she gets the approximate 14000 jobs from. And it breaks it down by skill by skill level and by exertion level. So she pulled out the 14000 unskilled sedentary jobs. Did the VE, Mr. Blake, also provide a number of available regional jobs for those two other positions or just a national numbers? Honestly, your honor, I'm not sure I'd have I would have to go back and check. I would say typically these do. I mean, normally they do say there's this many in the region and this many in the national economy. The commissioner focuses on the national economy. But but but often these do provide regional numbers as well. But I'm not sure in this case, because the focus has been on the national economy. That's easy enough to check. But thank you. Yes, sir. How many. So could you go to the twenty one thousand jobs again? That issue, which is sort of how many jobs in the national economy that you're opposing? Counsel argues that this is sort of a borderline case. You know, what do you say about that? Well, your honor, the court has, you know, the argument has been that this guy should be that the ALJ should make the determination of whether twenty one thousand is a significant number. But again, as it's been pointed out, claimant didn't raise this argument in the district court. Claimant never raised the argument that twenty one thousand was not a significant number or that ALJ needed that. It needed to be the ALJ needed to be the one to make that determination. So because he's failed to raise this issue in the district court, this court should not consider it. However, getting to the issue of whether. Can I just ask you a follow up question on that? Because so I understood that he appealed to the district court and he said, look, there's a there's an apparent conflict here that involves one hundred thousand jobs. And then you showed up and you said, who cares about one hundred thousand jobs? We've got twenty one additional kinds of jobs. But when was he supposed to raise the argument that the ALJ should make the ruling? Well, he certainly could have raised that in the district court. No, I'm saying when like when would you do that? Well, he could have raised it in his initial brief, but certainly he could have raised it in a reply brief. So you're saying his initial brief. I'm just trying to. So his initial brief should say there's an apparent conflict that affects one hundred thousand of the jobs that the ALJ relied on. And then he also should have said and the twenty one thousand jobs is a problem or something like that. Well, he could have he could have said he could have said, look, well, you know, and as I said, he doesn't contest that his claimant can do reasoning level one jobs, which are those twenty one thousand jobs. So he might he might have said, I can test these hundred thousand jobs. And also the ALJ is not supported by substantial evidence because the remaining jobs wouldn't be a significant number. And even if you were to say, well, he couldn't anticipate that we were going to make that argument, he still would have had opportunity to raise it at the district court level. But what I would also say in answer to your earlier question, this court has previewed the argument that this is not. This court has previously held that twenty one thousand is in the range of jobs that would be significant in the case. This court held that twenty three thousand eight hundred was a significant number of jobs. And even the court has even noted a lesser number in the I mean, much lesser in the in the Brooks case. This court held that only eight hundred and forty jobs in the national economy was a significant number. But certainly AFA is much closer because twenty three thousand eight hundred is very similar. Yeah. The problem, I guess, with all these cases that you're citing is they're all unpublished, right? At this unpublished is unpublished. They're all unpublished. And so although we can certainly consider that, we sort of have to address this. The way I kind of look at it is we kind of have to address this as an issue of first impression. Was AFA. Would you. Could you. And it's been a while since I looked at that case with AFA, an affirmance of an ALJ decision that said twenty three thousand jobs is sufficient. Yes, sir. That is correct. Yes. In that case and in Brooks also, those were cases where the ALJ did make that finding. But what I would point out, your honor, is that in Valdez and in Wooten, two cases where the court found that it didn't need to reach the reasoning level three jobs. In both of those cases, the court affirmed and found on its own initiative that the remaining jobs were a significant number. And how many jobs? And I don't know the answer to this question. How many jobs were at issue in those cases? Yes, sir. I do. And and quite frankly, in Valdez, it was seventy eight thousand jobs. And in Wooten, it was two hundred and thirty five thousand. Yeah, I recognize that those numbers are much higher than we're obviously dealing with here. But I raise those cases for the point that this court's practice has been to make that determination rather than remanding back to an ALJ to make that. In that sense, Mr. Blake, let me take you a little bit over your time and ask you this question. So as Judge Brasher noted, you know, the opinions in which we've opined about or talked about the number of jobs are unpublished. And so they don't they're persuasive, but they don't bind us. As far as you're aware, anywhere in the country, what is the lowest number that a circuit court of appeals has said is enough in the national economy? Do you know that off the top of your head? No, sir, I don't. I will say that if you're talking, if you're going, Brooks is a low number. Brooks is, you know, eight hundred and forty jobs is probably the lowest that I'm aware of. That is unpublished and that is an 11th Circuit case. The only published case in the 11th Circuit that comes to mind is the Allen case. And I believe that case was about 80,000 jobs. And we had cited it in the briefs. OK. All right, Mr. Blake, thank you so much. Thank you very much, your honors. Mr. Steinberg, you've got your rebuttal time. Yes, I want to point out, if you look at the Brooks case, the eight hundred and some odd jobs was really the testimony was that was in northern or the middle part of Alabama. It wasn't the national economy. So what they did is they said based on that number, there were a significant number of jobs in the national economy. So I don't think Brooks is a 38. But be that as it may, if we looked at the at the at the transcript, we'll see that the judge was pressuring me to wrap it up. You know, she's I have another hearing to wrap it up. Didn't really have much of a chance to. I did the best I could. But when we were talking about the check for your job, the vocational expert conceded that that it was it wasn't the only occupation, the occupation he considered. And I'm looking at page fifty five, six. He was saying that in that in that group of jobs, unskilled sedentary occupation were approximately 14000. Then when I talked to him about the gunpowder, he said, well, you know, there's also jobs, let's say a G.N.C. that they're weighing supplements. It's not even the same job. So, you know, our position is that the numbers. This is very similar to giving numbers for a group of jobs, but assigning them to one particular D.O.T. occupation. The same thing with the the job with the nose pieces and the temples on the glasses. I think the court can take some judicial notice that, you know, I've never in 40 years seen somebody who's done the 40 hours a week putting temple pieces and those pieces on glasses. I don't think anybody knows anybody like that. Seven thousand is an extremely high number for, you know, for for something like that. But but, you know, that's what the vocational expert said. But I don't have any more rebuttal. I just wrapped up. OK, Mr. Steinberg, thank you very much, Mr. Blake. Thank you very much again. We appreciate the help. Yes, you can go ahead and log off and we're going to bring the attorneys for the next case back on.